**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Beatriz Lopez Garcia, | No. CV-21-01547-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Beatriz Lopez Garcia's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of her application for Supplemental Security Income ("SSI") benefits. (Doc. 1.) The appeal is fully briefed (Docs. 15, 19, 21), and the Court now rules.

## I.     BACKGROUND

### A.     Factual Overview

Plaintiff initially alleged that she had been disabled since January 1, 2002, when she was only nine years old. (Doc. 12-3 at 13.) This was later amended to an onset date of May 3, 2013, when she was 20 years old. (*Id.* at 34.) She has one year of college, a veterinary assistance certificate, and no past relevant work experience. (Doc. 12-3 at 23; Doc. 12-8 at 270.) Plaintiff filed her SSI claim on November 16, 2018, alleging disabilities beginning on May 3, 2013, including bilateral hand and wrist impairments, diagnosed to include carpal tunnel syndrome and DeQuervain's syndrome; obesity; and mental health impairments diagnosed to include anxiety, depression, and obsessive compulsive disorder.

1   (Doc. 12-3 at 13, 16.) Her claim was initially denied on April 18, 2019, and upon
2   reconsideration on August 8, 2019. (*Id.* at 13.) Plaintiff subsequently requested a hearing
3   that was held telephonically on November 19, 2020. (*Id.*) On March 3, 2021, the ALJ issued
4   a decision finding Plaintiff not disabled under the Act. (*Id.* at 15–25.) The SSA Appeals
5   Council denied Plaintiff's request for review on July 14, 2021, and adopted the ALJ's
6   decision as the SSA's final decision. (*Id.* at 1–6.) Following this unfavorable decision,
7   Plaintiff filed the present appeal. (Doc. 1.)

8       **B.    The SSA's Five-Step Evaluation Process**

9           To qualify for social security benefits, a claimant must show she "is under a
10  disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically
11  determinable physical or mental impairment that prevents her from engaging "in any
12  substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process
13  for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1).
14  Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

15          At the first step, the ALJ determines whether the claimant is "doing substantial
16  gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial
17  gainful activity is work activity that is both "substantial," involving "significant physical
18  or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

19          At the second step, the ALJ considers the medical severity of the claimant's
20  impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically
21  determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe
22  impairment" is one which "significantly limits [the claimant's] physical or mental ability
23  to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and
24  aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

25          At the third step, the ALJ determines whether the claimant's impairment or
26  combination of impairments "meets or equals" an impairment listed in Appendix 1 to
27  Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled.
28  *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual

functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### C. The ALJ's Application of the Factors

At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (Doc. 12-3 at 15–16.)

At the second step, the ALJ determined that Plaintiff's bilateral hand and wrist impairments, diagnosed to include carpal tunnel syndrome and DeQuervain's syndrome; obesity; and mental health impairments diagnosed to include anxiety, depression, and obsessive compulsive disorder constituted severe impairments under 20 C.F.R. § 404.1520(c) and § 416.920(c). (*Id.* at 16.) The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.*)

At the third step, the ALJ determined that none of Plaintiff's impairments nor a combination of Plaintiff's impairments met or equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16–18.) After evaluating the record, the ALJ determined Plaintiff's RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: [Plaintiff] is able to frequently perform bilateral handling and fingering. She is able to maintain concentration, pace, and persistence for simple, routine, and repetitive tasks. She should not work in a setting that requires high time pressured work. She is able to maintain incidental social contact with only occasional interaction with public and coworkers.

(*Id.* at 19.)

At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 23.)

At the fifth and final step, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, a significant number of jobs exist in the national economy that she can perform. (*Id.* at 23–24.) The ALJ reached this conclusion based on the testimony of a vocational expert ("VE") who testified that Plaintiff could perform the requirements of sorter and inspector, which are described in the Dictionary of Occupational Titles ("DOT"). (*Id.* at 24.) The VE's testimony was based on hypotheticals provided by the ALJ based on Plaintiff's RFC. (*Id.*) Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of SSI from the alleged onset date through March 3, 2021. (*Id.* at 24–25.)

## II.    LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting

1    *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws

2    inferences, resolves conflicts in medical testimony, and determines credibility. *See*

3    *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450,

4    1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more

5    than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The

6    Court "review[s] only the reasons provided by the ALJ in the disability determination and

7    may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at

8    1010.

9    **III.   DISCUSSION**

10        Plaintiff raises three issues on appeal: (1) the ALJ improperly determined that

11   licensed professional counsel ("LPC") Robin DiRoberts' assessment was unpersuasive, (2)

12   the ALJ improperly discredited Lopez Garcia's subjective symptom testimony, and (3) the

13   Court should remand for an award of benefits or a new hearing. (Doc. 15 at 15–25.)

14        **A.      LPC DiRoberts' Assessment**

15        Plaintiff argues that the ALJ erred by rejecting LPC DiRobert's assessment in the

16   absence of germane reasons. (Doc. 15 at 15–17.) Plaintiff also argues that the ALJ erred

17   by failing to explain her consideration of the supportability and consistency factors. (*Id.* at

18   15, 17–19.) Thus, Plaintiff asserts, the ALJ's decision was not supported by substantial

19   evidence. (*Id.* at 15–19; *see also* Doc. 21 at 4–8.) The Commissioner argues that the ALJ's

20   finding was supported by substantial evidence. (Doc. 19 at 16–20.) Plaintiff counters that

21   the Commissioner improperly relied on evidence that does not transfer to the workplace,

22   relied on out-of-context evidence, and failed to address key parts of Plaintiff's arguments

23   in the Opening Brief (Doc. 15) when defending the ALJ's decision. (Doc. 21 at 6–8.)

24        LPC DiRoberts completed a "Medical Assessment of the Patient's Ability to

25   Perform Work Related Activity" form on October 20, 2020. (Doc. 12-15 at 1119–23.) On

26   the form, she evaluated Plaintiff's limitations in several areas on a scale of "none" to

27   "severe." (*Id.* at 1119–21.) In every subcategory (3/3) under "Understanding and Memory,"

28

DiRoberts found that Plaintiff experienced moderate limitations.[1] (*Id.* at 1119.) In "Sustained Concentration and Persistence," DiRoberts found that Plaintiff experienced severe limitations in 6/8 subcategories.[2] (*Id.* at 1120.) DiRoberts found that Plaintiff experienced no limitation in her ability to "carry out simple one or two-step instructions," and experienced a moderately severe limitation in her ability to "make simple work-related decisions." (*Id.*) In every subcategory (5/5) under "Social Interactions," DiRoberts found that Plaintiff experienced severe limitations. (*Id.* at 1121.) In 3/4 subcategories under "Adaptation," DiRoberts found that Plaintiff experienced severe limitations. (*Id.*) In "be aware of normal hazards and take appropriate precautions," DiRoberts found that Plaintiff experienced a moderate limitation. (*Id.*) DiRoberts also found that Plaintiff's limitations were expected to last for 12 months or longer and that Plaintiff was likely to miss work and to be absent from work more than three times a month as a result of her impairment(s). (*Id.* at 1122.) DiRoberts also left comments to flesh out her analysis of Plaintiff's mental state:

> I have worked individually with [Plaintiff] since 2016 and, for the most part, on a weekly basis. I also had the opportunity to work with her in a group setting with other individuals who suffer from anxiety disorders. She was eventually removed from this group due to more harm being done to her mental and emotional health. Throughout the course of her treatment, efforts have been made on her behalf to improve interpersonal effectiveness and become socially functional; however, [Plaintiff] continues to struggle significantly in social settings and in the therapy environment. Communication from [Plaintiff] is minimal and usually the result of being prompted by open-ended questions.
>
> [Plaintiff] also engaged in an art therapy program, in which she inconsistently attended an art studio two times a week for a few hours each day with other participants. While there, she spent her time to herself drawing and painting. Although she spent over two years in this program, she was not successful in

---

[1] Moderate limitations are defined as an "impairment [that] precludes [one's] ability to perform work-related functions 6-10% of an 8-hour workday." (*Id.* at 1119.)
[2] Severe limitations are defined as an "impairment [that] precludes [one's] ability to perform work-related functions 21% or more of an 8-hour workday." (*Id.* at 1119.)

engaging with others and did not graduate from the first phase of the program. Leaders at this facility reached out to this therapist expressing their concerns about the level of her anxiety.

It is difficult to describe the seriousness of [Plaintiff's] anxiety levels, as they permeate every facet of her life. She secludes from not only the general public but also from her family. She has been in therapy working on coping strategies with this writer since 2016, but she has not progressed to the point whereby she can engage in viable relationships or employment. Furthermore, it should be noted that these symptoms with which she suffers have been evident to her family members, teachers, school counselors, and therapists throughout her life.

[Plaintiff] is assessed each time she attends counseling sessions for her depression levels. On a scale of 0-10, with 10 being the worse, she consistently states that her depression is at a 7-9. She consistently receives medicinal therapy from a psychiatric nurse practitioner, but as of this writing, she has not been successful in finding medications that adequately help her symptoms. She has also learned coping strategies, [] which she has implemented but has not been, for the most part, successful in alleviating her symptoms. Her high depression levels, like her anxiety levels, keep her isolated and lacking the ability to venture out of her home unless it is for an appointment.

[Plaintiff's] symptoms were evident by her elementary school teachers, who informed her parents; thus, it is evident that she has struggled with them even though she has received therapeutic interventions since the age 10 years old. Furthermore, [Plaintiff] remembers her symptoms being present as early as when she first began Kindergarten. Consequently, she was given an autism screening, on which she tested high possibility for Autism Spectrum Disorder. This writer continues to assess for the same.

[Plaintiff] has been consistent with her therapy and has been engaged in sessions. She has made efforts to become involved in programs that promote her ability to learn social skills and regulation in the same environments, but has only been minimally successful, if that. She continues to struggle with social interactions and high levels of depression and anxiety.

1   (*Id.* at 1122–23.)

2          Having reviewed all of this information the ALJ rejected DiRobert's assessment:

3

4          I have reviewed and considered the persuasiveness of the
           opinions of [Plaintiff's] treatment provider, Robin DiRoberts,
5          LPC. Ms. DiRoberts stated, "She has been in therapy working
           on coping strategies with this writer since 2016, but she has not
6          progressed to the point whereby she can engage in viable
           relationships or employment . . . She continues to struggle
7          with social interactions and high levels of depression and
           anxiety." Ms. DiRoberts listed a variety of extreme opinions
8          regarding [Plaintiff's] limitations. For example, she opined that
           [Plaintiff] experienced severe limitations in nearly every
9          assessed category listed in the form. She also opined that
           [Plaintiff] would miss more than three workdays a month.
10         These extreme opinions are generally without substantial
           support, which obviously renders these opinions less
11         persuasive. Additionally, the course of treatment pursued by
           the doctor has not been consistent with what one would expect
12         if the truly experienced these extreme limitations. [Plaintiff]
           has not required psychiatric hospitalizations. [Plaintiff's]
13
           activities of daily living are not consistent with these extreme
14         opinions. For example, while [Plaintiff] experiences mental
           health symptoms, she is able to perform daily tasks as
15         discussed above.

16

17

18

19  (Doc. 12-3 at 22–23 (internal citation omitted).)

20         The law previously distinguished between the opinions of treating physicians,

21  examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821,

22  830 (9th Cir. 1995). This distinction was known as the "treating physician rule." *See*

23  *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *as amended on reh'g* (Aug. 9,

24  2001). "In March of 2017, [t]he Social Security Administration amended their regulations

25  to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc.*

26  *Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020)

27  (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg.

28  5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to

claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.*

Furthermore, the ALJ will consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources. *Alonzo*, 2020 WL 1000024, at *3. Contrary to Plaintiff's assertions that the ALJ must explain how she weighed factors under § 404.1520c(c)(3)–(5) (Doc. 20 at 23), under the new regulations, the ALJ must consider and explain how well the medical evidence supports the medical opinion and how consistent the medical opinion is with the record, and may, but is not required to, explain how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. § 404.1520c(b)(3).

"When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Although it was debated for years, recently, the Ninth Circuit definitively ruled that the "specific and legitimate" standard is not the law in Social Security cases where the revised regulations apply. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Specifically, the Ninth Circuit in *Woods* determined that

> [t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with [Plaintiff]. Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible

with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id.*(quotations and internal citations omitted). Thus, an ALJ need not give specific and legitimate reasons for not crediting the medical opinion of a treating physician. *Id.* at 791.

Substantial evidence supports the ALJ's determination that LPC DiRobert's medical opinion was inconsistent with the record. (Doc. 12-3 at 22–23); *see Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989))). Using the standard set forth in 20 C.F.R. § 404.1520c, the ALJ determined that Plaintiff's daily living activities—including cleaning the house; doing laundry; preparing simple meals; playing with and caring for pets; watching her nephews; accompanying family on shopping trips; driving; engaging on social networking sites; regularly attending therapy and doctors' appointments; completing technical school; going to the movies; going to stores; hanging out with friends; living and interacting with family members at home; creating art up to five hours a day, four times a week; and marketing and selling that art—conflict with the proposed restrictions in DiRobert's assessment. (*See, e.g.*, Doc. 12-3 at 40, 44; Doc. 12-8 at 280–96, Doc. 12-9 at 344, 349–50, 500–01; Doc. 12-12 at 692; Doc. 12-13 at 936; Doc. 12-16 at 1152.) The ALJ also determined that DiRobert's assessment did not comport with Plaintiff's conservative treatment regimen. (Doc. 12-3 at 23.) For example, Plaintiff's condition has not required any psychiatric hospitalizations; she has also reported spending up to five hours a day, four times a week, at an art studio producing art and spending additional time marketing and selling her art.[3] (Doc. 12-3 at 21, 23; Doc. 12-9 at 500–01; Doc. 12-12 at 692; Doc. 12-13 at 936.)

The Court finds that a reasonable person examining the evidence could come to the

---

[3] Plaintiff agrees that she has never been psychiatrically hospitalized. (Doc. 15 at 17–18, 24.)

ALJ's conclusions. The fact that Plaintiff's daily activities and course of treatment could be interpreted differently has no effect on this Court's ruling. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). Thus, the ALJ did not err by rejecting LPC DiRobert's medical opinion.

**B.    Subjective Symptom Testimony**

Plaintiff argues that the ALJ erred by discrediting her symptom testimony "in the absence of specific, clear, and convincing reasons supported by substantial evidence." (Doc. 15 at 19–24.) Plaintiff asserts that this error was harmful because the ALJ discrediting her symptom testimony tainted the VE testimony. (*Id.* at 19, 24–25.) The Commissioner argues that the ALJ discrediting Plaintiff's symptom testimony was reasonable. (Doc. 19 at 9–16.) Plaintiff counters that the Commissioner's argument takes evidence out of context, fails to show a conflict between the record and Plaintiff's symptom testimony, and fails to identify relevant evidence on which the ALJ relied when discrediting Plaintiff's testimony. (Doc. 21 at 8–10.)

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

"Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc) and *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). An ALJ's credibility determination "must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between her testimony and her own conduct, or on internal contradictions in that testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In analyzing whether to discount a claimant's testimony, "[t]he ALJ must identify the testimony that was not credible and specify 'what evidence undermines the claimant's complaints.'" *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ's findings "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49467 (Oct. 25, 2017). If the ALJ's path cannot "reasonably be discerned," the ALJ's decision must be reversed. *Treichler*, 775 F.3d at 1103.

While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged symptoms, *see Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001); *Fair*, 885 F.2d at 602, the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible. *See Batson*, 359 F.3d at 1197. Factors that the adjudicator may consider when making such credibility determinations include the nature, location, onset, duration, frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g., movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment, other than medication, for relief of pain, functional restrictions, and the claimant's daily activities.

1    *Bunnell*, 947 F.2d at 346 (citing SSR 88–13, 1988 WL 236011 (July 20, 1988)).

2         At the first step, "after careful consideration of the evidence," the ALJ determined

3    that "[Plaintiff's] medically determinable impairments could reasonably be expected to

4    cause the alleged symptoms." (Doc. 12-3 at 20.) But, at the second step, the ALJ

5    determined that "[Plaintiff's] statements concerning the intensity, persistence and limiting

6    effects of these symptoms are not entirely consistent with the medical evidence and other

7    evidence in the record." (*Id.*)

8         Regarding Plaintiff's physical impairments, the ALJ found:

9

10             [Plaintiff] was diagnosed with bilateral hand and wrist
               impairments, diagnosed to include carpal tunnel syndrome and
11             DeQuervain's syndrome. [Plaintiff] reported chronic bilateral
               hand and wrist pain as well as numbness and tingling.
12             [Plaintiff] was diagnosed and underwent carpal tunnel
               syndrome release in approximately 2014, well before her filing
13             date. [Plaintiff] reported that injections and bracing did not
               help. However physical findings and EMG findings were
14             relatively benign other than physiologic bilateral wrist laxity.
               For example, and EMG from 2017 was "completely normal".
15             A physical examination showed negative Tinnel sign. I have
               considered this impairment and associated limitations on
16             [Plaintiff's] residual functional capacity as discussed herein.
               [Plaintiff's] bilateral hand and wrist impairments and
17             associated pain limit her to performing light exertional work.
18             Additionally, she able to only frequently perform bilateral
               handling and fingering.
19
               In terms of [Plaintiff's] obesity, treatment records reflect that
20             [Plaintiff] has a body mass index ranging around
               approximately 34. I considered the effects of [Plaintiff's]
21             obesity on her residual functional capacity. Social Security
               Ruling 19-2p provides that obesity can cause limitation of
22             function. An individual may have limitations in any of the
               exertional functions such as sitting, standing, walking, lifting,
23             carrying, pushing, and pulling. The combined effects of obesity
               with other impairments may be greater than might be expected
24             without obesity. It can exacerbate mental health conditions. In
               [Plaintiff's] case, I find that [her] obesity limits her to the
25             physical residual functional capacity as discussed herein.

26

27

28

(*Id.* at 20–21 (internal citations omitted).)

Regarding Plaintiff's mental impairments, the ALJ found:

> The mental health impairments diagnosed to include anxiety, depression, and obsessive compulsive disorder. She has reported a lengthy history of mental health conditions, anxiety specifically, dating back to before her 22nd birthday. [Plaintiff] was also diagnosed with insomnia, which is likely related to her mental health conditions. [Plaintiff] reported anxiety symptoms including apprehensive expectation, autonomic hyperactivity, motor tension, and recurrent and intrusive recollections. She reported depressive symptoms including anhedonia, decreased energy, difficulty concentrating, and feelings of guilt or worthlessness. [Plaintiff] also reported recurrent panic attacks. However, at appointments, [Plaintiff] generally presented as well oriented and stable. Her providers also noted that although her mood was anxious, her memory was intact; her attention, concentration, judgment was good; and her motor activity, thought content, insight, judgement, and speech was within normal range. [Plaintiff] has sought and received appropriate treatment for her mental health impairments. This treatment has consisted primarily of therapy and medication management. She was trialed on a variety of mood stabilizing medications and anti-anxiety medications, including a combination of Lamictal, Geodon, Xanax, Wellbutrin, and Depakote. The medical evidence of record shows that [Plaintiff's] providers have frequently changed her mood stabilizing medications to attempt better control. [Plaintiff] has also been prescribed a combination of medications for sleep difficulties. Her medical provider recommended that [Plaintiff] exercise and or do yoga. [Plaintiff] reported that she tried to treat with a single therapist for a lengthy period. It appears that this combination of treatment has managed [Plaintiff's] mental health impairments. She testified and the medical evidence of record shows that although she has experienced occasional acute episodes, she has not actually required any psychiatric hospitalizations. I have considered this combination of mental health impairments and associated limitations on [Plaintiff's] residual functional capacity as discussed herein. In an abundance of

caution, I find that [Plaintiff] experiences moderate limitations in her ability to interact with others and adapt and manage herself. I find that she is able to maintain concentration, pace, and persistence for simple, routine, and repetitive tasks. She should not work in a setting that requires high time pressure work. She is able to maintain incidental social contact with only occasional interaction with public and coworkers.

(*Id.* at 21 (internal citations omitted).)

The ALJ also highlighted Plaintiff's daily activities:

[D]espite [Plaintiff's] impairments, [Plaintiff] has engaged in a level of daily activity and interaction more consistent with the residual functional capacity than with a finding of a complete inability to work. For example, she performs household chores like cleaning, laundry, and preparing simple meals. She cares for pets. Although she testified that she tries not the leave her home because of her anxiety, she testified that she will go out with her family. While she reported that she does not shop, but she "accompanies family when they go" shopping. She reported that she enjoyed watching television and movies, painting, and reading. She is able to drive. She reported issues with financial tasks, but attributed these problems to a lack of income and accounts rather than any type of mental health related symptom. She was able to complete technical school. She engages on social networking sites. She lives with her parents. The physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment. These every day activities are more consistent with my determination that [Plaintiff] is capable of the residual functional capacity discussed herein and less consistent with her allegations of completely disabling symptoms.

(*Id.* at 20 (internal citations omitted).)

The Court finds that the ALJ's conclusion is adequately supported by the record. (*Id.* at 19–21.) For example, as the ALJ noted, the record contains a deluge of evidence indicating that Plaintiff is able to work: she participates in normal daily activities, she has

received only conservative treatment, and her mental and physical impairments are well managed. (*Id.*); *supra* Section III.A.

The Court also finds that the evidence that the ALJ highlighted provides specific, clear, and convincing reasons for discounting Plaintiff's testimony. Plaintiff offered statements generally claiming that she was disabled and unable to work due to her disabilities. (Doc. 12-8 at 280–96.) But the ALJ observed, and the Court agrees, that much of the evidence in the record contradicts Plaintiff's assertions. The ALJ properly highlighted that much of the evidence in the record regarding Plaintiff's hand impairments, wrist impairments, and obesity point to limitations no less severe than those articulated in the RFC. (Doc. 21-3 at 20–21 (citing Doc. 12-10 at 513–89; Doc. 12-13 at 958–68; Doc. 12-14 at 1090–1109).) Similarly, the ALJ noted a plethora of evidence regarding Plaintiff's mental impairments that support her RFC determination. (Doc. 12-3 at 21 (citing Doc. 12-9 at 341–85, 482–505; Doc. 12-11 at 590–674; Doc. 12-14 at 969–1053; Doc. 12-16 at 1124–1176).) The ALJ also listed many activities in which Plaintiff participates that conflict with her symptom testimony and reinforce the RFC determination. *Supra* Section III.A. Additionally, the ALJ properly highlighted Plaintiff's conservative treatment regimen. For example, Plaintiff has not required any psychiatric hospitalizations. *Supra* Section III.A. Plaintiff has also reported spending up to five hours a day, four times a week, at an art studio producing art, and spending additional time marketing and selling her art. *Id.* The Ninth Circuit has noted that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Finally, the ALJ relied on the medical opinions of three different medical professionals who opined that Plaintiff was capable of the level of work consistent with the ALJ's ultimate RFC determination. (Doc. 12-3 at 22–23.)

Because a substantial portion of the record conflicts with Plaintiff's symptom testimony, the Court finds that the ALJ did not err in determining that the record evidence was generally not consistent with Plaintiff's subjective symptom testimony. Moreover,

these findings are factual determinations solely within the ALJ's responsibility and not for this Court to second guess. *Andrews*, 53 F.3d at 1039. Based on the foregoing, the Court finds that the ALJ provided specific, clear, and convincing reasons to discount Plaintiff's symptom testimony that were supported by substantial evidence in the record.

### C.   Further Proceedings

Finally, Plaintiff requests a remand for further proceedings or a calculation of benefits pursuant to the credit-as-true rule. (Doc. 15 at 25; Doc. 21 at 10–11.) But the Court is affirming the ALJ's decision; therefore, the Court denies Plaintiff's request for a remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (A direct award of benefits is proper "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits.").

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 26th day of July, 2022.

James A. Teilborg
Senior United States District Judge

- 17 -